Wm. Rubin & Son, Inc. v. Commissioner.
Wm. Rubin & Son v. Commissioner
Docket No. 6596.
United States Tax Court
1947 Tax Ct. Memo LEXIS 270; 6 T.C.M. (CCH) 306; T.C.M. (RIA) 47068; March 20, 1947
*270 1. Amount of deduction for depreciation on automobiles used partly for business and partly for pleasure, determined. 2. Reasonableness of salaries of petitioner's officers determined. 3. Deductions allowed to petitioner for amounts paid by it to others for benefit of officers. 4. Petitioner, on an accrual basis, credited to its secretary the full amount of her salary for its fiscal year ending September 30, 1941, but paid to her only a part thereof, in cash and by liquidating her obligations. She included the full amount of such salary in her income tax return. Petitioner had almost enough cash available to pay the unpaid portion but could have borrowed ample funds to complete the payment at any time during its taxable year or two and one-half months thereafter. The officer had authority to sign checks of petitioner and could have paid herself her full compensation during the petitioner's taxable year. Held, the deduction of unpaid salary is allowable since the conditions imposed by section 24(c), Internal Revenue Code, have not been met. Ohio Battery & Ignition Co., 5 T.C. 283. 5. Failure to file an excess profits tax return for the fiscal *271 year ending September 30, 1941 not due to willful neglect and penalty therefor disapproved. Douglas D. Feliz, Esq., 1612 Congress Bldg., Miami, Fla., and Herbert N. Schwartz, Esq., 1009 Biscayne Bldg., Miami, Fla., for the petitioner. S. Earl Heilman, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the petitioner's tax liabilities as follows: Income Tax
Fiscal year ending:
Deficiency
Penalty
September 30, 1940
$ 619.00
September 30, 1941
1,516.71
September 30, 1942
2,410.19
$120.51
Declared Value Excess Profits Tax
Fiscal year ending:
Deficiency
Penalty
September 30, 1941
$ 19.14
September 30, 1942
349.14
$ 17.46
Excess Profits Tax
Fiscal year ending:
Deficiency
Penalty
September 30, 1941
$ 319.68
$ 79.92
September 30, 1942
4,911.82
246.38
The issues are: (1) Is the petitioner entitled to depreciation on two automobiles which were purchased by it and carried as its assets on its books but the titles *273 to which were in the name of an officer of the petitioner? (2) The reasonableness of salaries of $4,000 per year for services performed by Fae Rubin and Rose Ginsberg. Were such salaries subject to the provisions of section 24(c), Internal Revenue Code? (3) Did Fae Rubin actually or constructively receive the full amount of her salary from the petitioner during the taxable years? (4) The propriety of the imposition of the 25 per cent penalty under the provisions of section 291, Internal Revenue Code. Findings of Fact The petitioner is a corporation organized and existing under and by virtue of the laws of the State of Florida, with its principal office in Miami, Florida. The petitioner filed its income tax returns for the taxable years, on the accrual basis, with the collector of internal revenue for the district of Florida. The 50 shares of stock of the corporation during the years involved in this appeal were held as follows: One share by Rose Ginsberg, one share by Fae Rubin, and the other 48 shares by Herman Rubin and his mother in approximately equal proportion. During the taxable years the petitioner was engaged in the *274 business of operating a retail store, selling all types of jewelry, diamonds, watches, silver, novelty items and luggage, and making loans on diamonds and watches. In the course of its business the petitioner made deliveries of diamonds and luggage purchased at the store and luggage which the petitioner repaired for customers. Such deliveries were often made at night. It was also customary for the petitioner to take diamonds to homes and hotels to show to prospective customers. For these purposes the petitioner purchased, on January 31, 1939, a LaSalle automobile and paid therefor the sum of $1,596.56, and on July 31, 1939, it purchased a Dodge automobile and paid therefor the sum of $1,164. On August 31, 1941, the LaSalle automobile was traded in on a new Cadillac automobile. The petitioner was allowed its depreciated cost, or $565.46, on the LaSalle and paid the balance of the purchase price of the Cadillac ($1,168) in cash. The petitioner carried the automobiles on its books as assets. Title to one of the automobiles was taken in the name of Fae Rubin, secretary of the petitioner, while title to the other was taken in the name of Rose Ginsberg, its treasurer, but no charge was *275 made to their accounts for the purchase price of the cars. Herman and Fae Rubin, the petitioner's president and secretary, respectively, used the LaSalle (later the Cadillac) to some extent, for personal use and, in consideration of so doing, they paid all of the costs of upkeep on that car, including gasoline and oil. Rose Ginsberg also used the Dodge occasionally for personal use and paid all of its upkeep costs, including gasoline and oil. Both cars were used primarily for deliveries, picking up and delivering luggage for repairs, and other business uses of the petitioner. The Rubins used the LaSalle (later the Cadillac) automobile in making deliveries for the petitioner in the section of Miami in which they lived and Rose Ginsberg used the Dodge car for like purposes. In its tax returns the petitioner claimed a useful life of four years for its automobiles. Due to unavailability of new cars since 1941, the automobiles were still being used in 1946, notwithstanding large repair expenses. During the taxable years in question, and for many years prior thereto, Fae Rubin and Rose Ginsberg were employed by the petitioner. Their duties were principally in the loan department. They *276 appraised diamonds and watches, which were offered as collateral for loans, made loans, and bought diamonds. When necessary, they also acted as salesladies. In addition, Fae Rubin acted as cashier, made deposits, assisted the bookkeeper, wrote letters and served as secretary of the petitioner. Both Fae Rubin and Rose Ginsberg devoted their full time to the business and were exceptionally competent and able employees. Their working hours were from 9:00 a.m. until 6:00 p.m. on week days, and from 9:00 a.m. until after 9:00 p.m. on Saturdays. During the month of December they worked from 9:00 a.m. until 9:00 or 10:00 p.m. every day. In addition, Fae Rubin also worked frequently on Sundays. The duties performed by Fae Rubin and Rose Ginsberg in the petitioner's loan department require a high degree of ability and much expereince, inasmuch as the appraisal of diamonds and watches requires not only technical knowledge and experience, but also constant alertness. Experience, honesty, and trustworthiness are essential. It is difficult to secure satisfactory employees and it is, therefore, customary for the small loan departments of businesses such as the petitioners' to be handled by members *277 of the owners' families; an outsider could easily make false loans and otherwise cheat his employer. During the taxable years in question, Fae Rubin and Rose Ginsberg were each credited on the petitioner's books with salaries of $4,000 per year. Those salaries were reasonable in amount and less than the customary salary paid to employees performing similar duties in like businesses in the Miami area. Another business of the same kind, located near the petitioner, paid $5,200 per year. These salaries were fixed by corporate resolution on May 15th of each year. Fae Rubin and Rose Ginsberg had received these same salaries since at least 1936. During the same period Herman Rubin, as president, had received an annual salary of $6,000. The petitioner paid $65 a week, each, to the watchmaker and to two salesmen. The busy season in the petitioner's business is during the winter months from December to March, inclusive. Fae Rubin and Rose Ginsberg each reported the aforesaid $4,000 salary as income in their income tax returns for each of the years here in question. On October 1, 1939, Rose Ginsberg's account on the petitioner's books had a credit balance of $13,645.29. During the taxable *278 year ending September 30, 1940, $4,000, representing salary, was credited to her account and she withdrew from the business during that year the sum of $4,671.23, all of which was charged to her account. During the succeeding taxable year, ending September 30, 1941, $4,000 salary was also credited to her account, and she withdrew from the business during that year the sum of $9,089.74, all of which was charged to her account. During the taxable year ending September 30, 1942, $4,000 salary was credited to her account and she withdrew during that year the sum of $5,924.86, all of which was charged to her account. On October 1, 1939, Fae Rubin's account on the petitioner's books had a credit balance of $17,018.67. During the taxable year ending September 30, 1940, $4,000 salary was credited to her account and she personally withdrew from the business during that year the sum of $372.60. Also, during that year, the petitioner paid $10,232.84 on account of a new house which Fae Rubin was constructing and furnishing as her separate property. Such amounts, aggregating $10,232.84, were to be charged against Fae Rubin's account but, through error, they were charged to Herman Rubin's account. *279 Fae Rubin subsequently sold the house and invested the proceeds in bonds. During the taxable year ending September 30, 1941, the $4,000 salary was credited to Fae Rubin's account and she personally withdrew from the business during that year the sum of $505.59. During that fiscal year petitioner also paid $1,392 on the new house and that amount was again charged to Herman Rubin's account. During the taxable year ending September 30, 1942, $4,000 salary was credited to Fae Rubin's account. During that year she personally withdrew from the business the sum of $453.70 and petitioner paid $4,540.98 on her house and in payment of other of her personal bills. This amount was erroneously charged to Herman Rubin's account. Fae Rubin had the authority to draw checks on the petitioner's bank accounts during the years in question and could have, at any time, drawn from the petitioner the full amount of the credit balance in her account. On September 30, 1942, Fae Rubin's account on the petitioner's books was charged with $3,418.98 and Herman Rubin's account was credited with that amount. The explanation given was as follows: "To transfer following charges to proper accounts: 11/31/41
Andirons
$ 26.98
3/31/42
Radio
60.00
3/31/42
Drapes
657.00
2/28
Plane tickets
75.00
Salary drawings
2,600.00"
*280 The petitioner reported a net operating loss in the amount of $4,484.25 for the taxable year ending September 30, 1940. For the taxable year ending September 30, 1941, it reported a net income of $642.91. The petitioner filed its income and declared value excess profits tax returns and excess profits tax return for the taxable year ending September 30, 1942 within the period prescribed by law. The petitioner's balance sheet for the taxable year ending September 30, 1941, is as follows: ASSETS
Cash
$ 1,913.41
Notes and accounts receivable
14,563.35
Inventories
44,610.08
Capital assets: (a) Depreciable assets - Auto
$ 2,897.46 - F. & F.
8,363.86
Total depreciable assets
$11,261.32
Less: Reserve for depreciation
7,071.37
4,189.95
(b) Depletable assets - Bldg
$24,169.96
Less: Reserve for depletion
6,187.44
17,982.52
Land
27,000.00
Other assets: Officer
$ 502.61
Prepaid expenses
1,230.78
1,733.39
Total assets
$111,992.70
LIABILITIES
Accounts payable
$ 13,511.34
Bonds, notes, and mortgages payable: (a) With original maturity of less than one year
$11,447.10
(b) With original maturity of one year or more
21,000.00
32,447.10
Accrued expenses
570.53
Other liabilities: Officers
48,897.63
Capital stock: Common stock
5,000.00
Earned surplus and undivided profits
11,566.19
Total liabilities
$111,992.70
*281 The respondent determined that the petitioner's officers were the owners of the two automobiles and disallowed depreciation deducted thereon by the petitioner in the amount of $690.14 for the taxable year ending September 30, 1940; in the amount of $327 for the taxable year ending September 30, 1941; and in the amount of $724.36 for the taxable year ending September 30, 1942. The respondent determined that Fae Rubin's salary of $4,000 for each of the taxable years was unallowable as a deduction by reason of the application of sections 23(a) and 24(c) of the Internal Revenue Code. The respondent held that the deductions of $4,0000 claimed by the petitioner for annual salary to Rose Ginsberg were unallowable to the extent of $3,480 for each of the taxable years under the same sections of the Internal Revenue Code. The respondent determined that the petitioner failed to file income and declared value excess profits tax returns for the year ending September 30, 1942, and excess profits tax returns for the years ending September 30, 1941 and September 30, 1942, within the period prescribed by law and, accordingly, the respondent determined the petitioner was *282 liable for 25 per cent and 5 per cent deliquency penalties in the total amount of $464.27. Opinion VAN FOSSAN, Judge: The petitioner proposes that it be allowed 100 per cent of the annual depreciation suffered on its automobiles, albeit the automobiles were used partly for business and partly for pleasure, because, by arrangement among the officers of the corporation, all costs of operation of such automobiles were borne by the officers who used them for pleasure and made no claim for a deduction of such expenses. The petitioner sold jewelry, diamonds, watches, silverware and luggage. It also repaired luggage and made loans with diamonds and watches as collateral security therefor. While it transacted a considerable volume of business over the counter, the presentation and sale of diamonds in private homes and hotels, the collection of luggage for repair and its return, and the delivery of newly sold luggage (important factors in producing its income) required the petitioner to purchase, in 1939, two automobiles for such purposes and to keep them so available at all times. Much of the business use of the automobiles was made after business hours and on Sundays. The deduction *283 proposed by the petitioner cannot be approved. Deductions are a matter of legislative grace. They are allowable or disallowable on their own merits and are not subject to collateral arrangements by the parties. A deduction for the expense of operating automobiles used in business is not interchangeable with a deduction for depreciation of such property. Though both are business expenses, each must stand on its own feet and be proved as such. Though the arrangement may have been equitable between the corporation and its officers, and as to this the proof is lacking it cannot be approved as a basis for determining the amount of the respective deductions. It is not binding on the Government. It does not follow that the petitioner is entitled to no allowance for depreciation, as held by the respondent. The automobiles were unquestionably used for business purposes as well as for personal pleasure. The record does not reveal the number of miles of each such use or otherwise make possible an accurate calculation. There is enough evidence, however, to permit us to make a reasonable approximation of the business use. It is our judgment that the petitioner should be allowed 60 per cent of *284 the annual depreciation as a charge to business expense. The record contains the data necessary to make such a calculation. The deduction of such an amount is approved. The second issue presents the reasonableness of the annual salaries of $4,000 paid to Fae Rubin and Rose Ginsberg. Little comment need be added to the facts as we have found them. Both of these officers of the petitioner were engaged in highly specialized work, - the appraisal and buying of diamonds and watches and the making of loans with such articles pledged as collateral security therefor. They worked long hours and Fae Rubin, at least, worked after business hours and on Sundays. We note that the usual compensation for such skilled work was $100 per week; that the petitioner paid its president $6,000 per year (an amount not questioned by the respondent) for his part-time attention to its business; and that it paid its watchmaker and two salesmen $65 a week each. The amounts paid to Fae Rubin and Rose Ginsberg are not out of line with such other business payments and, therefore, we deem them to be reasonable for the services performed. In the third issue the respondent challenges the receipt of the full amount *285 of the salary by Fae Rubin and invokes the provisions of section 24(c), Internal Revenue Code, [1] as barring the amounts not actually withdrawn by her during the respective taxable years. He concedes that the section is not applicable to the salary claimed by Rose Ginsberg since she actually withdraw more than $4,000 during each taxable year or within two and one-half months thereafter. *286 During the taxable years ending September 30, 1940 and September 30, 1942, Fae Rubin withdrew in cash $372.60 and $453.70, respectively. In addition, the petitioner paid out for her account sums aggregating $10,232.84 and $4,590.98, respectively. Through a bookkeeping error these amounts were charged to her husband's account on the petitioner's books. She, however, received the full benefit of the payments, either through the purchase, construction and furnishing of her house or through the liquidation of her personal debts. She owned the house, later sold it and then invested the proceeds from the sale in bonds which were her sole and separate property. Therefore, for these two years the petitioner is entitled to deduct the amounts of $4,000 paid to Fae Rubin as her annual salary. The taxable year ending September 30, 1941 presents a different situation. During that year Fae Rubin withdrew $505.59 and the petitioner paid $1,392 for her on the new house, or a total of $1,897.59. Under the facts and principles heretofore set forth, the petitioner is entitled to a deduction for that amount. It contends that the remainder of the $4,000 salary, or $2,102.41, is also deductible on *287 the theory of constructive recept. (Section 24(c)(2).) The respondent argues that the funds necessary to pay Fae Rubin the "unwithdrawn" amount of her salary were not readily available to her; that she could not have drawn on them at any time during the taxable year or two and one-half months thereafter; and that the financial position of the petitioner precluded the possibility of her so doing. The three conditions imposed by section 24(c) must coexist. Michael Flynn Manufacturing Co., 3 T.C. 932, and cases there cited. Subsection (2) provides that the disallowance of the expense deduction is predicated on the fact that the amount thereof is not includible in the gross income of the recipient during his taxable year and, as stated in Michael Flynn Manufacturing Co., supra: "Conversely, if the amount claimed as the deduction is includible in the current income of the one in whose favor it is accrued, then section 24(c) may not be interposed to disallow it." The item in question, the $2,102.41 not paid to Fae Rubin directly or by the payment of her obligations, was included in her income tax return. Was it properly includible therein? If it was constructively *288 received by her it was so includible. Michael Flynn Manufacturing Co., supra. The facts show clearly that Fae Rubin did receive, constructively, such sum. Her salary of $4,000 per year, established by the petitioner for the fiscal year ending in 1936, was credited without restriction to her account in each subsequent year and, so far as this record shows, was not questioned by the respondent until the first taxable year before us. She was the secretary of the petitioner and had the right and authority to draw its checks at any time for the full amount of her salary. Her unpaid salary was hers for the asking, and she had only herself to ask. The petitioner had ample cash, liquid assets, and borrowing power to cover such withdrawals, if made. See Ohio Battery & Ignition Co., 5 T.C. 283. At other times during the three taxable years petitioner's officers withdrew considerable sums. In fact, Rose Ginsberg obtained amounts over $7,500 in excess of her current salary. If Fae Rubin had needed to make similar withdrawals it is logical to assume that she, the wife and daughter-in-law of the majority stockholders, could have obtained her salary in full. After making *289 the payments to Rose Ginsberg the petitioner still was fully able to pay Fae Rubin's salary deficiency. Therefore, we conclude that section 24(c)(2) does not apply to the petitioner's fiscal year ending September 30, 1941, and the full amount of Fae Rubin's salary is deductible from its gross income. The respondent has abandoned all of his claims for penalty except the penalty for failure to file an excess profits tax return for the fiscal year ending September 30, 1941, under the provisions of section 291, Internal Revenue Code. [2] The situation presented by the record is sufficient to establish that the petitioner was not required to file an excess profits tax return for 1941 (section 729(b)(2)). The petitioner's return showed net income of only $642.91. Our holding as to the year 1941 indicates that the petitioner's officers were justified and correct in claiming the disputed deductions. Therefore, there was no excess profits tax liability. The respondent's assertion of the penalty is disapproved. *290 Decision will be entered under Rule 50. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. * * * * *
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disllowed under section 24(b)↩.
2. SEC. 291. FAILURE TO FILE RETURN. In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 2612 (d) (1).↩